[Cite as *In re S.J.*, 2013-Ohio-1053.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   |                          |
|--------------------------|---|--------------------------|
| IN THE MATTER OF:        | : | JUDGES:                  |
|                          | : | Patricia A. Delaney, P.J.|
|                          | : | William B. Hoffman, J.   |
| S.J. AND L.J.            | : | Sheila G. Farmer, J.     |
|                          | : |                          |
|                          | : | Case No. 2012 AP 11 0069 |
|                          | : |                          |
|                          | : |                          |
|                          | : |                          |
|                          | : | O P I N I O N            |


CHARACTER OF PROCEEDING:      Civil Appeal from Tuscarawas County
Court of Common Pleas, Juvenile
Division, Case No. 11 JN 00464

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 18, 2013

APPEARANCES:

For Parents R.J. & H.J.      For Appellee

JOHN A. GARTRELL      DAVID HAVERFIELD
Assistant Public Defender      Tuscarawas County Job and
153 N. Broadway      Family Service
New Philadelphia, Ohio 44663      389 – 16th Street, S.W.
New Philadelphia, Ohio 44663

Guardian ad Litem

KAREN DUMMERMUTH
349 East High Avenue
New Philadelphia, Ohio 44663

*Farmer, J.*

{¶1} Appellants, R.J. and H.J., appeal from the October 30, 2012, Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, terminating their parental rights and granting permanent custody of S.J. and L.J. to Tuscarawas County Job and Family Services.

STATEMENT OF THE FACTS AND CASE

{¶2} S.J. (DOB 7/4/97) and L.J. (DOB 10/20/98) are the children of appellants H.J. and R.J., who are married. On September 6, 2011, Tuscarawas County Job and Family Services ("TCJFS") filed a complaint alleging that the children were dependent children and seeking temporary custody of them. The complaint indicated that the children previously had been found neglected and placed in the temporary custody of Hocking County Children Services. Pursuant to a Judgment Entry filed on September 7, 2011, the children were placed in the temporary custody of TCJFS and appellants were granted visitation "as is acceptable to TCJFS."

{¶3} An adjudicatory hearing was held on October 5, 2011. As memorialized in a Judgment Entry filed on October 6, 2011, the trial court found the children to be dependent children and ordered that they remain in the temporary custody of TCJFS.

{¶4} On May 18, 2012, TCJFS filed a motion seeking permanent custody of the children. An evidentiary hearing was scheduled for September 27, 2012. On June 18, 2012, TCJFS filed a motion asking that visitation between the children and appellants be suspended because appellants had been passing inappropriate notes to L.J. The trial court ordered that there be no further visitation or contact between appellants and

their children pending further court orders. The evidentiary hearing was rescheduled to October 17, 2012.

{¶5}   At the October 17, 2012 hearing, Kathy Fisher, a caseworker with TCJFS, testified that the agency had received the case from Hocking County where the children had been placed in foster care. The Hocking County case was transferred to Tuscarawas County in approximately November of 2010. Fisher testified that TCJFS had received calls that the children were missing a lot of school and that there were concerns about home conditions. She further testified that the family had been involved with Children's Services in multiple jurisdictions over the past several years. According to Fisher, "[t]hey were involved in our county in 2000, 2001, 2002, 2006, and then I believe they were in Perry County, Trumbull County, New Mexico, they had Children's Services cases there, too." Transcript at 5. The concerns in all of the cases were over truancy and home conditions.

{¶6}   Fisher was questioned about the children's school attendance. She testified that out of 28 possible days of school attendance in Tuscarawas County, L.J. had attended 7 days and S.J. had attended 13 days. The children's school records were admitted as exhibits.

{¶7}   Fisher also testified that a case plan was developed for appellants that addressed concerns about home conditions. Appellants were required to keep the home clean and neat and to allow a caseworker into the home for visits.  Fisher testified that she was unable to routinely gain access to the home throughout the case because appellants would cancel visits, were not home, would fail to answer the door, or would refuse to allow her to enter the home. She testified that they refused her admittance on

more than one occasion. During the case, she gained access to the home 7 or 8 times and there appeared to be some progress. However, Fisher testified that there were times where the home had regressed and she was concerned about the conditions. She testified that she was never really able to assess whether appellants had implemented any long term changes in the cleanliness of their home.

{¶8} Fisher testified that the children had "pretty severe" educational delays when they entered foster care. Transcript at 9. When the children were 12 and 13, they tested at a kindergarten through first grade level of knowledge and "were pretty whiny, pretty clingy, um, scared of a lot of things, a lot of social delays." Transcript at 9-10. According to Fisher, the children had been in foster care since December 17, 2010 and were doing well academically. She testified that "they are just absorbing knowledge like sponges," that their social skills had improved, that S.J. was a cheerleader and that both children ran track. Transcript at 10.  S.J. was almost caught up to her grade level in reading.  Fisher testified that they were angry about missing so much school and that one of the goals of the case plan was to ensure that their educational needs would be met. Fisher further testified that appellants denied any responsibility for their children not being educated and claimed that they had home schooled the children.

{¶9} Both appellants submitted to psychological examinations that were admitted into evidence. Fisher testified that the results indicated concerns over appellants' ability to manage the educational needs of their children.  She further testified that appellant R.J. was less than forthcoming in terms of his psychological examination and refused to sign any releases from Hocking County.

{¶10} Appellants' case plan also required them to attend parenting classes and family counseling. While they attended the parenting classes, Fisher testified that appellants were not able to successfully demonstrate what they learned during visits with the children. She also testified that appellants attended individual counseling, but that while they were recommended to attend counseling in April, appellants did not start individual counseling until November because they did not feel a need for the same. Appellants were fully compliant with counseling once they started. According to Fisher, no family counseling occurred. When asked why there was no family counseling, Fisher testified as follows:

{¶11} "A. The girls were in individual counseling, and they were working through their issues of not having the education they should have had.  Um, they were very angry with their parents.  As they were working through it, they came out with some things that, um, made them upset, that made them doubt that their parents were gonna change, and because [R.J.] and [H.J.] had not ever accepted any of the responsibility, the counselors felt that it would set the girls off to have family counseling with them.

{¶12} "Q. So, the girls' individual counselors did not, were not in favor of these, this family starting family counseling, is that right?

{¶13} "A. That's correct."  Transcript at 14-15.

{¶14} The children were placed together. Fisher testified that they were initially placed in a group home and stayed there probably eight months, but that they then were moved to a foster home and had remained in the same foster home. She testified that they were doing wonderfully in foster care and were attached to their foster parents and that the foster parents had indicated a willingness to adopt them.  Fisher testified

that S.J. was sometimes mean to her sister because her sister reminded her of appellant H.J.

{¶15} Fisher was asked why visitation was stopped by the court at the request of the agency. She testified that visitation was stopped after L.J. came home from a visit and said that appellant H.J. had passed her a note which asked L.J. to tell Fisher that she wanted to come home. The note asked L.J. not to allow S.J., their foster parents or anyone else to see the note and directed L.J. to destroy it. At the time, S.J. was not visiting with her parents because she saw that they were not accepting any responsibility. Fisher testified that another note was passed to L.J. and that, in such note, appellants told L.J. that their grandmother was dying because she missed them so much and they would not come home. According to Fisher, the note made L.J. feel guilty.

{¶16} The last time either of the children had visited with appellant was in June of 2012. Fisher testified that since that time, the children had been doing well in foster care and in school. According to Fisher, the children did not want to return to their parents. She further testified that appellants had done things on their case plan, but not implemented them and had not accepted responsibility for the situation. When asked if she was confident that the children would be consistently enrolled in school and continue to make progress if returned home, Fisher stated that she did not believe that they would. She testified that she believed it was in the children's best interest for permanent custody to be granted to the agency.

{¶17} When questioned by the trial court, Fisher agreed that the Guardian ad Litem's report indicated that, when the children were 12 and 13, they did not know what year it was or what the days of the week were in proper order.

{¶18} On cross-examination, Fisher testified that appellants said that they had home schooled their children, but that there was no documentation supporting such assertion. She testified that in the Hocking case, which was opened in December of 2009, truancy was an issue because the children were not enrolled in school. Once the case was transferred to Tuscarawas County, the children were removed from the home because they started to miss an excessive amount of school and also due to unsanitary home conditions. Fisher testified that once the children returned to Tuscarawas County, it took about two and a half weeks to get them enrolled in school.

{¶19} At the hearing, appellant H.J. denied that the children were so delayed when they came to the attention of Children's Services. She testified that she home schooled the children and had records documenting the home schooling, but that the same had been stolen from their home. Appellant H.J. testified that she had filed the home school documents with the school district where she was living, but had no explanation for why the school district had no records. She further testified that if the children were returned to her, they would go to school. The following is an excerpt from her testimony:

{¶20} "Q. What responsibility do you and your husband bear for the fact that your kids were so severely delayed when they came into foster care?

{¶21} "A. I know we made mistakes, I admit that to Ms. Fisher, you know (sic).

{¶22} "Q. What mistakes did you make?

**{¶23}** "A. I made mistakes by, you know, I thought I was doing my best, trying to teach 'em at home, but I realized that I had failed, and that I would not do it again, that I would put them in regular school and keep 'em there. I've even tried to get involved in their IEP's and we were not allowed, and that was part of the case plan." Transcript at 49.

**{¶24}** Appellant H.J. testified that she continually rescheduled appointments and did not let Fisher have access to her home either because she was sick or did not get the calls from Fisher because her phone was acting up. She admitted giving a note to L.J. and indicating on the note that L.J. was to destroy the note and not to tell anyone about the same. She testified that she did not know for sure if that was something that she was not supposed to do, but took a chance. Appellant H.J. denied that she put blame in the note on L.J. for her grandmother's poor health. However, she indicated that she believed that the children's placement in foster care was the reason for a decline in their grandmother's health. Appellant H.J. admitted that she regretted writing the note and that that it was wrong to do so. She testified that appellants had been living in the same home for three years and had steadily been making improvements to the same.

**{¶25}** The next witness to testify was appellant R.J. He testified that the children were delayed in school due to their parents' lack of education and denied that the children were delayed to such a degree. Appellant R.J. further testified that if the children were returned to him, he would put S.J. in counseling because she was bitter and had been told, incorrectly according to appellant R.J., that appellants were the reason she was in foster care.

{¶26} At the hearing, Patricia Heldt, appellants' neighbor, testified that appellants had a loving and respectful relationship with their daughters and that they loved each other. She testified that the children did not seem delayed academically and "were a little bit slow on some things". Transcript at 92. She also testified that the family home was appropriate and was always clean. Heldt testified that she believed that the children should be returned to appellants. Rhea Anderson, another neighbor, testified that appellants were good people and that they were very religious. She also testified that the family home was clean and uncluttered. The final witness to testify was Regina Enmen whose husband is appellant R.J.'s cousin. Enmen testified that she was saw appellants at least one a month and that they were loving and caring parents who were protective of their children. She indicated that the children seemed academically delayed to her, but that their delay was not appellants' fault.

{¶27} The Guardian ad Litem, in her October 12, 2012 report, had recommended that permanent custody be granted to the agency because it was in the children's best interest. She voiced concerns over the educational neglect of the children and stated that appellants did not see the value of an education and did not want the children to develop relationships outside of the home.

{¶28} Pursuant to a Judgment Entry filed on October 30, 2012 the trial court terminated appellants' parental rights and granted permanent custody of S.J. and L.J. to TCJFS. The trial court, in its Judgment Entry, found that the children could not and should not be placed with appellants within a reasonable period of time.

{¶29} Appellants now raise the following assignment of error on appeal:

{¶30} "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN COULD NOT BE PLACED WITH FATHER AND MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILDREN'S BEST INTEREST."

I

{¶31} Appellants, in their sole assignment of error, argue that the trial court abused its discretion in awarding permanent custody to TCJFS because TCJFS failed to prove by clear and convincing evidence that the children could not be placed with appellants within a reasonable period of time and that an award of permanent custody was in the children's best interest.  We disagree.

{¶32} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. No. CA–5758, 1981 WL 6321, (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.  *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶33}  R.C. 2151.414(E) sets out the factors relevant to determining permanent custody.  Said section states in pertinent part as follows:

**{¶34}** "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

**{¶35}** "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties…."

**{¶36}** R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* at 477.

{¶37} R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:

{¶38} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶39} "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶40} " (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* * *;

{¶41} "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶42} "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶43} In the case sub judice, the trial court found that the children could not and should not be placed with either appellant within a reasonable period of time and that appellants had 'failed continually and repeatedly to substantially remedy the conditions causing removal."

{¶44} As is stated above, there was testimony that the children, at the time of removal, had significant educational and social delays. There was testimony that when the children were 12 and 13 years of age, they functioned at a kindergarten/first grade level. The children also did not know the days of the week and did not know what year it was. Appellants denied that their children were significantly educationally delayed and refused to accept any responsibility for the delay. While appellant H.J. claimed that she had home schooled the children, there were no records supporting her assertion. In addition, because appellant refused Fisher admittance to the house on a number of occasions, Fisher was unable to ensure that the house was clean and sanitary. As noted by the trial court in its decision, "[o]verall, case plan compliance and implements by the parents has been minimal….It is clear that neither parent rectified the parental deficits that caused these children to be removed from their parents."

{¶45} Upon our review of the evidence, we find sufficient clear and convincing evidence to establish that the children could not be placed with appellants within a reasonable time.

{¶46} Moreover, with respect to best interests, there was testimony that the children did not want to be returned to appellants and were doing well in the same foster home. They had been in the same foster home since December of 2010 and were attached to their foster parents, who were interested in adopting them. S.R., who was

angry with appellants, refused to visit them and visits between appellants and L.J. were suspended after appellant H.J. wrote an inappropriate note to L.J. and told her to destroy the same and to not show the note to anyone else. In addition, there was testimony that both children were doing well in school and were engaged in extracurricular activities. Moreover, the Guardian ad Litem, in her report, indicated that it was in the children's best interest that permanent custody be granted to the agency. She indicated that there were no other alternate placement options.

{¶47} Upon review, we find that the trial court did not err in finding that the best interests of the children were best served by granting permanent custody to the agency.

{¶48} Based on the foregoing, appellants' sole assignment of error is overruled.

{¶49} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.


By: Farmer, J.

Delaney, P.J. and

Hoffman, J. concur

s/ Sheila G. Farmer_____

s/ Patricia A. Delaney_____

s/ William B. Hoffman__ _____

JUDGES


SGF/d0219

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                          :
                                           :
    S.J. AND L.J.                          :
                                           :
                                           :
                                           :          JUDGMENT ENTRY
                                           :
                                           :
                                           :
                                           :          CASE NO. 2012 AP 11 0069


    For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.  Costs assessed to appellant.



                                        s/ Sheila G. Farmer_____


                                        s/ Patricia A. Delaney_____


                                        s/ William B. Hoffman___ _____

                                            JUDGES